The next matter, number 24-1907, United States v. Kevin Lee Ross. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning. My name is William Welch and I am appearing for the appellant Kevin Ross. Judge Montecalvo, may I split my time five and five, please? You may not, but if you'd like rebuttal, I'll give you two minutes. Fair enough. Thank you. Kevin Ross' trial was unfair because the district court misapplied the authority it cited, Ross 1, and Rule 403. It treated the party's actual stipulation as if it were only an offer by the defendant to stipulate. The government stipulated that the exhibits in this case were child pornography. And the government said, quote, so the question really is, did the defendant knowingly possess this material? Essentially, this case is about who among Kevin Ross, his brother Scott, and his brother Mike possessed child pornography. The exhibits are not probative of whom among those three possessed them. The district court should have considered the nine exhibits. But there's still an element. An element is child pornography, and I understand there's a stipulation. But I don't understand the law to be, and therefore you are limited government only to the stipulation, and that is it. You cannot show the jury what you're talking about with that stipulation. Now maybe if they showed the entire collection, this case might be different, but it's a relatively narrow portion of the collection. What's the authority for, and you're stuck with the stipulation alone. Well, the authority in this case is that the court, the district court, failed to weigh the discounted probative value on the issue of who among those three these exhibits would show. The one argument is there were three devices, right? And the question is, did your client possess those devices? And there is indicia of him on those devices, right? Some indicia. And so that they had the same, I'll say genre of CSAM material, is indicative of they're by the same person, because the sexual interest runs to the same kind of material. So why is that not relevant to some degree to say, well, it seems like it's the same person, and there's some indicia of the defendant, and that makes it relevant and worthy of putting before the jury. What's wrong with that argument? In this case, the problem is that Ross's defense was that he'd been framed by his brother Scott. So the problem here is that nothing in those exhibits shows that it's Kevin Ross. It's not like he took the phone. It doesn't bring you all the way home. It's not like, oh, I've shown you the nine pieces of CSAM material. It's over. I'm not saying that. But why is it not a piece of the puzzle? It's the same genre of material on three devices. The three devices each have indicia of the defendant's use, and that, coupled with the 20 other things we told you, is why we should find him guilty. But that's still at least a piece of the narrative. Why should the government be totally precluded from showing the jury that, so that they can see the kind of CSAM we're talking about? Because it doesn't show that it's, in this case, more likely Kevin as opposed to Scott. Well, when it's sitting adjacent to the gardening information and the Harley-Davidson information, it does. It's all on the same device. All on the same device. And those other two things are your client's interests. Correct. Which is also if someone, his brother, most likely his brother Scott, is trying to frame him and make it look that way. So the question is... Well, there's also the evidence that, as far as I believe it was the laptop is concerned, it stopped when he went to jail and started up again when he got out of jail. And that evidence would have come in regardless. So it's our position that in a proper 403 analysis, following the procedure outlined in Old Chief, that the court would have said, well, that's more probative. And that's going to come in anyway. So just showing these pictures in order to arouse and inflame the jury's disgust distracts them from the question, really, is it Kevin or is it Scott or Mike? Do you see Ross, the first Ross case, as being different from this one? Yes, it is different. In what way? It's different in the sense that that was, well, the issues in that were waiver of the motion trying to force a stipulation on the government versus in this case, the government actually went ahead and stipulated. So the government's saying they concede that this point is proven. There's no need to introduce this evidence that risks, has a high risk of inflaming the jury on points that have already been proven. And that's where we fault the district court in this case because the district court- Does it say that the CSIM was prepubescent females? Does the stipulation say that? I believe it- It says, the exhibits are images produced by using an actual person under the age of 18 engaging in sexually explicit conduct. These images of child pornography were produced using materials that have been mailed, shipped, transferred- Take Judge Thompson's point, right? So let's say each of the devices have Harley Davidson's on them and now each of the devices has, let's say, CSIM material of girls, of females in the age of 12, let's just say. You would still say, oh, Scott set the whole thing up. That would be your argument.  Their argument would be, he's interested in Harley Davidson's and he's interested in sexual materials of 12-year-old girls. Those two things go together, make it more likely that he'd be guilty. That's the argument. The jury resolves it. You're saying they don't get to show what it was to match it up with the Harley Davidson's and that's where I think I lose this argument. Because the point that we're trying to make is that you don't have to actually show the child pornography videos to make that point to the jury. You've already made the point in that Agent Kelly is testifying- You agree there's all different kinds of CSIM materials dealing from babies to 17-year-olds. Do you agree with that? Yes. Do you agree that the materials in this case all were of the same general age and sex of the young people involved? Yes. And so there is a similarity across the devices. Right. Child pornography is similar on all the devices. And the point, though, is that- And that's not in the stipulation. That is not in the stipulation. The point is that Agent Kelly's testimony, the computer expert, about where he found these things is far more probative of the point that you're making, Judge Aframe, than showing a video that's just designed to outweigh- But it's a trial, right? So that's your point and that's their point and somebody else decides. Right. Yeah. And I will reserve the balance of my time, please. Thank you. At this time, would counsel for the government please introduce herself on the record to begin? Good morning. May it please the Court. Lindsay Feinberg on behalf of the government today. The District Court properly balanced Rule 403. As both Judge Thompson and Judge Aframe alluded to in their questions for opposing counsel, the government's entitled to present the evidence of its choosing in order to establish its narrative story for the jury. And in this case, what's fundamentally important to understand as part of the narrative that jurors may expect in a case involving CSAM is to see what the CSAM is. Is there a limit on this? There is probably an outer limit. Yes, Judge Aframe. I will say that there's not a case that opposing counsel cited and there's one that I found that seems to find a limit at certain, and I want to be careful what I'm saying on the record, but certain very upsetting or very disturbing. Now, the government recognizes all CSAM as disturbing, but I think there was an instance in a Fifth Circuit case. Can you picture a quantum of CSAM that would overwhelm a trial in a way that's unnecessary? I've tried to make the argument here, you know, showing similarities and that can be done on a certain number, but as you just continually show these images, it does at some point seem like it's – Diminishing returns. Yes. Especially when you couple that with Agent Kelly's testimony, which describes the images in a lot of detail, I think. Detail but not putting a thumb on the scale, Judge Montecalvo. There's no suggestion that anything Agent Kelly said was being, I don't know, unduly lurid or florid in his description. How does that happen? Is it playing and he's narrating it or is it just the image is playing and the agent is describing what's being shown? So I think it happened two different ways of close reading the record reveal. So again, just taking two steps back, in aggregate there were 1,380 files involving CSAM and there were three devices charged, the laptop, the hard drive, and the cell phone. Now what the government chose to do here is pick two still images from each device and then one video excerpt. Now these video excerpts in total, there were three of them, again, one for each device, were in total what the jury saw was less than 15 seconds of CSAM in aggregate. So what happened here with respect to the still images is there was a projector in the courtroom and they would have been flashed up on the courtroom projector for the jury to view. And I know in preparing for this oral argument, I wasn't in the courtroom when this happened, but the lawyer who tried it represented to me that it was up for one or two seconds, each still image. And then at that point, Agent Kelly was permitted to testify as to what was shown on that image, that it had been briefly shown. So it's shown for two seconds, then the agent testifies about what that image shows. Then the next picture is projected. Yes, Your Honor. With the video, I believe the video was played and the same thing transpired. I was rereading the transcript last night and the question, and again, I wasn't in the courtroom so I don't know that I can answer this with complete certainty. The AUSA handling the trial asks a question such that, what are we about to see, Agent Kelly? So that may imply that Agent Kelly previewed what the jury then saw, but it's not entirely clear to me from the transcript, that timeline. And I apologize. There was no objection to the agent's testimony. No, as the government made clear in its brief, there was no contemporaneous objection made to anything that Agent Kelly said. What would be the point of a stipulation in a case like this? It's an important one, Your Honor, because again, the defendant was charged with possession of child pornography. So if there wasn't the stipulation, an opposing counsel read it out loud to the court, so I won't do it again, but the benefit of doing that from the defendant's perspective is it doesn't put the government to its burden of establishing that these are actual children under the age of 18. And how that would typically happen at a trial is the case agent who interviewed that child after that child was victimized would come in and testify and say that the child in the depiction was in fact a child under the age of 18, a real person, and they had been victimized in this way. They'd been sexually abused. So that testimony, of course, Judge Thompson, would probably be even more prejudicial than the limited subset of the CSAM that was shown here. And that would be the benefit of a defendant in seeking to stipulate. Okay. And that's the benefit to the government in not having to do that kind of proof? Yes, Your Honor. It's a benefit to the government. Some of these files, and I can't speak to the specific ones here, but some of them are older files, and it may involve an agent who's since retired. So then you have to track down that person and find someone who's able to testify. But certainly streamlining the proof in cases like this, particularly in cases where the material is very upsetting, I think benefits both sides. But the point, I think fundamentally, is the defendant doesn't get to hamstring the government on telling its story of the case by entering into a stipulation of the nature that was entered into here. But what was the – based upon the government's theory of the case here, what was the point of showing it? Knowledge. I think it's twofold. The most important one is knowledge, that anyone who knowingly possessed these devices for any matter of time would know that they were replete with the exact same genre of child sexual abuse material. If the Court recalls there was testimony introduced at trial that when the cell phone was recovered from Mr. Ross's bedroom, upon putting it into airplane mode, an image that is indicative of an interest in prepubescent girls was essentially immediately available. And that with a couple of clicks, you could get into the other CSAM on the device. The same ready accessibility was true for the laptop and the hard drive that were surreptitiously hidden in the trunk. So the argument would be, one, if it's a setup and it's buried in the cache, you'd still be guilty, but it would be hard to find and that would be favorable. So you were trying to – I mean, did this tie into – and these images were just like readily available on the phone in easily accessible places? Yes. And also the temporal element, Your Honor. These were devices that – and the jury heard ample testimony about this – that were used over the span of weeks, months, and years. And they indicated that the same person was behind all three devices. And in order to establish that the same person behind those devices was Kevin Lee Ross as opposed to his brother, it's fair for the government to show CSAM on the phone was found on these dates. Surprise, surprise, it's the same amount of CSAM on the phone that was found on the hard drive and the laptop that were accessed or viewed on these dates. And so all of these could be used either way in an argument, but ultimately it's an argument, right? I mean, one could say, oh, the bad guy downloaded them all on the same day. And that's why we defer to the fact finder. But I think the critical fact here, if I were to point it out, is there's not a single case that Mr. Ross has cited that says entering into a stipulation prevents the government from presenting its story to the jury. And I think the government did here present its story, but it did so in a very prudent, careful way. And to say that these small subset of CSAM that was shown to the jury somehow unduly prejudiced them simply doesn't align with the record, and it simply doesn't align with a single case that's been cited. So if there had not been a stipulation, the government's position is that you would have needed to bring in more evidence? More evidence to establish that the material is in fact CSAM, yes, Your Honor, in order to meet the statutory definition. Okay. So then the stipulation does have a relevance in and of itself? It does insofar as it streamlines. As we were talking about earlier, Judge Thompson, if the government was put to its burden as to establishing that an actual child was depicted in each case. The real child was taken out of the case by the stipulation. Interstate commerce was taken out of the case by the stipulation, right? Yes, Your Honor. And so you didn't have to introduce anything about the make or where the devices were built? Correct. We did not have to elicit testimony, although all three devices were made available for the jury. So yes. But those are elements of a child pornography prosecution that you did not have to prove because of the stipulation. That had a benefit to you. You also explained why it had a benefit to the defendant, because not so much where the computer was built, but the testimony about the child can be upsetting because you learn more about an agent, at least. You could actually bring in the child if you could do that, or you could bring in the agent who would say, I met this child, if they become more real. In theory, the government could bring in the child. I think for victim concerns, the government would try to not have to do that. But yes. But either way, there's a more reality to the child by this real-life testimony of someone who met the child. That's what the agent would say. I sat in a room with the child. What observation did you make of the child? Whatever those are. Or I conducted a forensics interview of this child, and during that interview, I learned. And those, it's beneficial to both you and the defendant for different reasons for that not to happen. Yes. I think both sides were focused on the knowledge element here, and I think it is beneficial to both sides to engage in a stipulation. But the fact that both sides benefit means that also it's not a unilateral tool to sort of bludgeon the other side. Rather, it's an effort to streamline the cases that's coming in for the jury and for the district court. And if the court has no further questions, I would rest on my brief. Thank you.  Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. I am William Welch.  When I read the transcript, the agent describes four still photographs and two videos. And he describes what they're showing, what they depict as they're being shown. The benefit to the defendant is in not inflaming the jury because he has the right to a fair and impartial jury. Having an agent... Other than Old Chief, do you have any case that sort of the stipulation is the end of the story, you can't introduce anything else? No, because the cases, by and large, involve motions and limine or some effort to say, well, we offered to stipulate, but then under Old Chief, you can't force the government. But see, Old Chief seems very different to me because that trial, what's important is you committed a felony. That's important to the case. It's not important if that was murder versus tax fraud. And the difference between murder versus tax fraud would have a chance to inflame the jury about this person in a situation that's entirely irrelevant to what's being proven. But here, it is not a slam dunk, but it is, at least to me, a step in the chain of thinking about whether it was your client who did it. And so it seems Old Chief's very different, which I guess is why I'm asking, do you have any authority other than Old Chief for this idea that the stipulation is it? I don't. And I believe even the case that comes closest, which the government cites, which is Seventh Eid's involves a stipulation. The problem with Eid's is that the harmless error analysis is flawed in that. It talks about just overwhelming evidence, and it doesn't follow Sullivan versus Louisiana and say, but did this contribute to the jury's verdict? Did this child pornography evidence influence the jury's verdict? And I see that my time is just about up. I'm happy to answer any other questions that the court might have. No, your time is up, but thank you very much. Thank you. May I be excused?  Thank you, counsel. That concludes argument in this